UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MULTILINK INCORPORATED, ) | CASE NO. 1:23-cv-964 |
| ) | |
| Plaintiff, ) | JUDGE CHARLES E. FLEMING |
| ) | |
| v. ) | |
| ) | |
| CONWAY CORPORATION, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |
| ) | |

Before the Court is Defendant Conway Corporation's ("Conway") Motion to Transfer Venue and/or Dismiss, which seeks dismissal based on a lack of personal jurisdiction and transfer due to improper and inconvenient venue. (ECF No. 6). Plaintiff Multilink Incorporated ("Multilink") filed a memorandum in opposition, (ECF No. 11), and Conway filed a reply in support, (ECF No. 12). For the reasons discussed below, Conway's Motion to Transfer Venue and/or Dismiss is **DENIED**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 2023, Multilink filed a complaint for declaratory judgment against Conway in the Lorain County Court of Common Pleas. (ECF No. 1-1, Compl.). The complaint made the following allegations relevant to the instant motion: (i) Multilink is an Ohio corporation, with its principal place of business in Ohio, that designs, manufactures, and supplies telecommunications network components; (ii) Conway is an Arkansas corporation, with its principal place of business in Arkansas, that provides electric, water, wastewater, video, internet, voice and security systems to the community of Conway, Arkansas; (iii) in February 2019, Conway contacted Multilink to purchase its "MicroDucts" product—a conduit that allows wires (e.g. fiber optic cables) to be fed

1

through without damage or bending; (iv) Conway submitted four purchase orders between February 2019 and May 2019 (February 6, 2019, April 23, 2019, April 30, 2019, and May 16, 2019); (v) Multilink processed the four purchase orders, shipped the ordered goods to Conway, and Conway paid for the goods; and (vi) in early 2021, Conway informed Multilink, that it believed the delivered goods were deficient and threatened legal action if a total refund was not provided. (*Id.* at PageID #5–8). Multilink asserted a single cause of action for declaratory judgment, requesting a declaration that: (i) the purchase agreements between Multilink and Conway are binding contracts; (ii) the statute of limitations bars Conway from pursuing breach of contract and breach of warranty claims against Multilink; (iii) Conway cannot seek a refund for the relevant goods; and (iv) Conway missed the deadline to reject or protest the relevant goods. (ECF No. 1-1, PageID #8–11).

On May 11, 2023, Conway removed this action to the Northern District of Ohio on the basis of the Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1). On May 16, 2023, Conway filed the instant Motion to Transfer Venue and/or Dismiss. (ECF No. 6). The motion sets forth three, alternative requests: (i) dismissal based on lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (ii) dismissal based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3); and (iii) transfer of venue pursuant to 28 U.S.C. § 1404(a). (*Id.* at PageID #34–39).

## II.     MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.     Legal Standard

Fed. R. Civ. P. 12(b)(2) provides for the dismissal of a complaint based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887–88 (6th Cir. 2002)).

However, courts review a motion to dismiss for lack of personal jurisdiction under a burden-shifting framework: (i) first, the plaintiff makes a *prima facie* case for personal jurisdiction, which can be done solely through the complaint; (ii) if plaintiff makes a *prima facie* case, the burden shifts to the defendant, who must support its motion to dismiss with evidence; and (iii) if defendant sufficiently supports its motion to dismiss, the burden shifts back to the plaintiff "who may no longer stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 437–38 (6th Cir. 2022) (citing *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)) (internal quotations marks omitted); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) ("[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.").

When deciding a Rule 12(b)(2) motion, a district court has discretion to: (i) decide the motion on the basis of affidavits alone; (ii) permit discovery in aid of deciding the motion; or (iii) conduct an evidentiary hearing on the merits of the motion. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). When a district court relies solely on written submissions and affidavits to resolve the issue, the burden is relatively low and requires the plaintiff make only a *prima facie* showing that personal jurisdiction exists to avoid dismissal. *Air Prods. & Controls, Inc. v. Safetch Int'l, Inc.*, 503 F.3d 544 549 (6th Cir. 2007). "The court must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal." *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (citation and internal quotations omitted).

**B.** **Discussion**

Conway argues that Multilink's claims must be dismissed for lack of personal jurisdiction because Conway did not purposefully avail itself of Ohio's jurisdiction and does not possess sufficient minimum contacts with Ohio to establish this Court's personal jurisdiction over Conway. (ECF No. 6, PageID #34–36). Multilink disagrees, arguing that the Court has personal jurisdiction over Conway because: (i) Ohio's long-arm statute permits the exercise of personal jurisdiction over Conway under Ohio Rev. Code § 2307.382(A)(1); and (ii) the exercise of specific jurisdiction over Conway comports with due process under the Sixth Circuit's three-part test. (ECF No. 11, PageID #113–17). Conway replies that Multilink has failed to show evidence of sufficient minimum contacts to establish personal jurisdiction. (ECF No. 12, PageID #130–33).

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). "General jurisdiction exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there." *Id.* (quoting *Goodyear Dunlop Tires*, 564 U.S. at 919). Multilink makes no arguments concerning general personal jurisdiction nor does the record establish such jurisdiction over Conway.

To assert specific personal jurisdiction over a defendant, a federal district court must find that: (i) the defendant is amenable to service of process under the forum state's long-arm statute; and (ii) the exercise of personal jurisdiction satisfies the requirement of due process. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, Ltd., 91 F.3d 790, 793 (6th Cir. 1996); *see also Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510-11 (6th Cir. 2006) ("In order to establish jurisdiction over a non-resident

4

corporation in a federal diversity matter, the defendant must be shown to meet one of the criteria enumerated in the Ohio long-arm statute . . . and be within the bounds of constitutional due process." (internal citation omitted)). "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

   1. *Ohio's Long Arm Statute*

Prior to 2021, Ohio's long-arm statute specifically conferred specific personal jurisdiction over an out-of-state defendant who engaged in any of the nine enumerated acts that occurred "in this state." Ohio Rev. Code § 2307.382(A)(1)-(9). In April 2021, the Ohio General Assembly amended Ohio's long-arm statute to state: "In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). "Since the amendment, neither the Supreme Court of Ohio nor any Ohio appellate court has addressed the effect of this new language." *A.B. Pratt & Co. v. Bridgeport Grp., LLC*, No. 1:22-CV-1579-PAB, 2023 U.S. Dist. LEXIS 62708, at *24 (N.D. Ohio Apr. 10, 2023) (collecting cases); *see also Herold v. Venetis*, 2023-Ohio-3829, ¶ 36 n.4 (Ohio Ct. App. 2023) (declining to consider whether the two-step analysis for personal jurisdiction is no longer necessary under the amended Ohio long-arm statute). Courts in the Northern District Ohio are split as to whether Ohio's long-arm statute is now coterminous with the limits of the United States Constitution. *See Doe v. Varsity Brands, LLC*, No. 1:22-CV-02139, 2023 U.S. Dist. LEXIS 134515, at *21-22 (N.D. Ohio Aug. 2, 2023) (collecting cases); *Farson v. CooperSurgical, Inc.*, No. 3:22-CV-716, 2023 U.S. Dist. LEXIS 136384, at *7-8 (N.D. Ohio Aug. 4, 2023) (same); *A.B.*

5

*Pratt & Co.*, 2023 U.S. Dist. LEXIS 62708, at *24–25 (same). Because of this split and the uncertainty surrounding the 2021 amendment to Ohio's long-arm statute, and the possibility that the Court is still required to conduct the traditional two-step inquiry, the Court will analyze personal jurisdiction under both Ohio's long-arm statue and the Due Process Clause.

Multilink contends that Ohio's long-arm statute provides for personal jurisdiction over Conway under the "transacting any business" clause. (ECF No 11, PageID #113). This clause of the statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from a person's: (1) Transacting any business in this state . . . ." Ohio Rev. Code § 2307.382(A)(1). The Ohio Supreme Court has concluded that the broad wording of Ohio Rev. Code § 2307.382(A)(1) "permits jurisdiction over non-resident defendants who are transacting any business in Ohio." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (citing *Ky. Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990)). Notably, the Sixth Circuit has held that the "Ohio 'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431–32 (6th Cir. 2006).

Ultimately, the Court must determine if the exercise of personal jurisdiction satisfies the requirements of constitutional due process, which entails determining if Conway purposefully availed itself of the forum state. Because the purposeful availment prong will necessarily determine whether Conway was "transacting any business" in Ohio within the meaning of the long-arm statute, and Conway does not argue against the application of Ohio's long-arm statute, the Court will move directly to its analysis of due process.

6

### 2. Constitutional Requirements of Due Process

In order for personal jurisdiction to comply with the requirements of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citation omitted). "Minimum contacts exist where a defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (internal quotation marks omitted). The Sixth Circuit has established a three-part test for determining whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

#### a. Purposeful Availment

Conway raises arguments solely concerning the first prong of the test concerning purposeful availment, stating that it did not conduct any serious business or activity within Ohio. (ECF No. 6, PageID #35–36). The purposeful availment requirement is the "sine qua non" for personal jurisdiction. *Southern Machine*, 401 F.2d at 381–82. The requirement is satisfied when a defendant's contacts with the forum state "proximately result from actions by the defendant [itself] that create a 'substantial connection' with the forum State," and these connections and contacts with the forum are such that the defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S. Ct. 2174, 85 L. Ed.

7

2d 528 (1985) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). The primary aim of the purposeful availment requirement is to ensure that a defendant's contacts with the forum state are not merely "random, fortuitous, or attenuated." *Id.* at 475.

Purposeful availment occurs when "the defendant deliberately has engaged in significant activities within a State, . . . or has created continuing obligations between himself and residents of the forum." *Burger King*, 471 U.S. at 475–76 (internal citations and quotation marks omitted). In such circumstances, the defendant "manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476.

The Sixth Circuit has specifically held that the mere existence of a contract is insufficient to confer personal jurisdiction over a non-forum defendant. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (citing *Nationwide Mut. Ins. Co.*, 91 F.3d at 795). However, "the presence of certain factors in addition to the contract will be found to constitute purposeful availment." *Air Prods. & Controls, Inc.*, 503 F.3d at 551 (citing *Burger King*, 471 U.S. at 478–79). Such factors include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (quoting *Burger King*, 471 U.S. at 479). The court's focus should be on the quality and not quantity of the defendant's contacts with the forum state. *See Calphalon*, 228 F.3d at 722; *Air Prods. & Controls, Inc.*, 503 F.3d at 551.

Viewing the facts in a light most favorable to Multilink, the Court finds that Conway purposefully availed itself of the privilege of conducting business in Ohio. The parties do not dispute that Conway and its agents never physically came to Ohio and that the relevant goods were

8

shipped to and remain affixed in Arkansas. But a defendant's physical presence in the forum state is not required for purposeful availment, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996), and other factors, including the quality and nature of Conway's interactions and contacts with Ohio, demonstrate purposeful availment.

While the mere existence of a contract between Conway and Multilink, an Ohio citizen, does not establish personal jurisdiction, courts in this circuit have found personal jurisdiction proper when the contract concerns the manufacture of products within the forum state. *See T & W Forge, Inc. v. V & L Tool, Inc.*, No. 05-CV-1637, 2005 U.S. Dist. LEXIS 24619, at *20-21 (N.D. Ohio Oct. 21, 2005) (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 227 (6th Cir. 1972); *Southern Machine*, 401 F.2d at 383). Conway contracted with Multilink for the purchase of its MicroDucts product. (ECF No. 1, PageID #7). According to a sworn declaration provided by Multilink, the goods were designed, developed, and manufactured entirely within Ohio. (ECF No. 11-1, PageID #125).

This case also involved more than a single purchase agreement or contract between the parties. Conway submitted, and Multilink processed, four separate purchase orders over a four-month span. (ECF No. 1, PageID #7; ECF No. 11-1, PageID #125). Conway was purchasing goods manufactured in Ohio, from an Ohio company, with all shipments originating from Ohio. The purchase agreements indicated that goods were shipped F.O.B. from Ohio and that the title and risk of loss on all purchased products would pass to Conway once the goods were delivered to a common carrier, which occurred in Ohio. (ECF No. 1-1, PageID #16). Thus, the title and risk of loss were transferred to Conway while the goods were still within Ohio. *See, e.g.*, *Advanced Polymer Scis., Inc. v. Phillips Indus. Servs.*, 34 F. Supp. 2d 597, 601 (N.D. Ohio 1999) ("The goods were shipped F.O.B. Avon, Ohio, so that the risk of loss while the goods were in transit passed

9

from APS to Phillips when the goods were delivered to the carrier in Avon, Ohio."); *Sadler Mach. Co. v. Ohio Nat., Inc.*, 102 F. Supp. 652, 655 (N.D. Ohio 1952) ("Where the contract of sale provides for a sale f.o.b. the point of shipment, the title is generally held to pass, in the absence of a contrary intention between the parties, at the time of the delivery of the goods for shipment at the point designated." (quotation marks and citations omitted)). Each of these purchase agreements can be seen as Conway creating additional contacts and deeper connections with Ohio. There was also a sizeable transaction across the four purchase orders, with Conway requesting a refund for the cost of the purchased goods in the amount of $190,611.50. (ECF No. 1-1, PageID #8). The purchase agreements and order acknowledgments demonstrate that Conway was sending payments and correspondence to an entity and agents located within Ohio. (ECF No. 1-1, PageID #13–14).

The four purchase agreements were not the first interaction between these parties, nor the first time they conducted any business. The affidavit provided by Conway attests that Multilink and Conway had "done business for a number of years and had done business before purchasing the MicroDucts that are the subject of this litigation." (ECF No. 6-1, PageID #41). Multilink attests that it has maintained an ongoing business relationship with Conway for five years. (ECF No. 11-1, PageID #124). Construed in a light most favorable to Multilink, the evidence demonstrates that Conway's connections and contact with Ohio were not isolated and attenuated. Given the length of the parties' relationship and prior business dealings, Conway was reasonably aware that it was contracting with an Ohio company, who was developing, selling, and shipping products that were manufactured in Ohio, and it had knowingly taken advantage of the protections and benefits of Ohio law. *See Air Prods. & Controls, Inc.*, 503 F.3d at 551 ("In this case, the parties did not engage in a one-time transaction, but in a continuing business relationship that

10

lasted a period of many years. Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan. Such contacts are not 'random,' 'fortuitous,' or 'attenuated,' but are the result of deliberate conduct that amounts to purposeful availment."). Accordingly, Multilink has made a *prima facie* showing that Conway purposefully availed itself of the privilege of conducting business activities in Ohio. As such, Conway is also amenable to service under the "transacting any business" portion of Ohio's long-arm statute. *See Burnshire Dev., LLC*, 198 F. App'x at 431–32.

b. Arising from Defendant's Activities in the Forum State

The second element of the *Southern Machine* test is also satisfied. "When the cause of action is for breach of contract and the defendant's activities in the forum state were connected with that contract, the second prong of the *Southern Machine* test is easily met." *Ptg Logistics, LLC v. Bickel's Snack Foods, Inc.*, 196 F. Supp. 2d 593, 601 (S.D. Ohio 2001); *see also Compuserve*, 89 F.3d at 1267 (If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."). Multilink's cause of action is related to the contract/agreement between the two parties and the instant complaint was filed in response to Conway's threat that it would pursue a breach of contract claim against Multilink for the defective MicroDucts product. Multilink seeks a declaratory judgment that the parties have a binding agreement, and that Conway is barred from suing for breach of contract and/or breach of warranty under the terms of that agreement. (ECF No. 1-1, PageID #11). At this time, Conway has not yet asserted any defenses or counterclaims, but its filings indicate that it believes the purchased goods to be defective and they are entitled to a refund (the basis of a breach of contract or breach of warranty claim). The operative facts in this case relate to the parties' agreement, as well as any representations concerning and surrounding

11

that agreement. Accordingly, the cause of action in this case arises from Conway's activities in Ohio.

### c. Reasonableness

The final prong of the *Southern Machine* test requires that the exercise of personal jurisdiction over the non-forum defendant be reasonable. When plaintiff has satisfied the first two elements for personal jurisdiction under the *Southern Machine* test, there is an inference and presumption that the third element of reasonableness has also been satisfied. *See CompuServe*, 89 F.3d at 1268; *Cole v. Mileti*, 133 F.3d. 433, 436 (6th Cir. 1998). Because Conway has made no arguments addressing the reasonableness prong of the test, or any that address the inference of reasonableness, the exercise of jurisdiction in this action is reasonable. *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552–53 (6th Cir. 2016) ("Because there is an inference of reasonableness when the first two *Southern Machine* prongs are satisfied, and because there are no considerations put forward by Brewington to overcome or contradict that inference, the exercise of jurisdiction is reasonable under the circumstances of this case." (cleaned up)); *see also Air Prods. & Controls, Inc.*, 503 F.3d at 554 ("[W]here, as here, the first two criter[ia] are met, an inference of reasonableness arises and only the unusual case will not meet [the substantial connection] criteri[on]."). Furthermore, Ohio has a strong interest in this action because it involves goods that were designed, manufactured, and shipped in Ohio. Thus, it would be reasonable for the Court to exercise personal jurisdiction over Conway.

Because Multilink has satisfied all three prongs of the *Southern Machine* test, and Conway is amenable to service under Ohio's long-arm statute, the Court has specific personal jurisdiction over Conway. Accordingly, Conway's motion to dismiss for lack of personal jurisdiction is **DENIED**.

### III. MOTION TO DISMISS FOR IMPROPER VENUE

Conway alternatively moves to dismiss the complaint pursuant to Rule 12(b)(3) because Ohio is not a proper venue for this action under 28 U.S.C. § 1391(b). (ECF No. 6, PageID #36–37). Multilink responds that venue is proper in the Northern District of Ohio because: (i) Multilink is located within this jurisdiction; and (ii) a substantial part of the events or omissions giving rise to the claim occurred here." (ECF No. 11, PageID #117–18).

The Sixth Circuit has held that "[v]enue in removed cases is governed solely by § 1441(a)." *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 534 (6th Cir. 2002) (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665, 73 S. Ct. 900, 97 L. Ed. 1331 (1953)). Section 1441(a) provides that a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Courts in this circuit have determined that when defendants have removed a case filed in state court on the basis of diversity jurisdiction, they are precluded from seeking dismissal for improper venue pursuant to Rule 12(b)(3). *See, e.g.*, *Schmiede Corp. v. Exact Software N. Am.*, No. 4:13-CV-47, 2014 U.S. Dist. LEXIS 204784, at *4 n.1 (E.D. Tenn. Feb. 18, 2014); *Key Elec. Servs. v. Empro of Ariz., LLC*, No. 1:05-CV-701, 2005 U.S. Dist. LEXIS 59634, at *8–9 (N.D. Ohio Aug. 8, 2005) ("Defendants removed the case to this court and are now filing a motion to dismiss challenging venue. This court is bound by *Kerobo* to apply the removal statute when determining venue. The court finds that the statute and the case law precludes Defendants from challenging venue at this time."); *Tumbleweed, Inc. v. Am. Fed.*, No. 3:03-CV-20-S, 2003 U.S. Dist. LEXIS 2780, at *2-3 (W.D. Ky. Feb. 2, 2003) (explaining that when a case is properly

removed from a state court to federal court, "while venue may have arguably been improper in the state court, our venue on removal is unassailable").

Multilink filed its complaint in the Lorain County Court of Common Pleas. Conway did not challenge venue at that time, but instead elected to remove this case to the Northern District of Ohio pursuant to 28 U.S.C. § 1441(a). Thus, Conway is precluded from seeking dismissal pursuant to Rule 12(b)(3). *See Kerobo*, 285 F.3d at 534. The Northern District of Ohio is the federal district court that encompasses Lorain County, Ohio and is therefore the only proper venue under § 1441(a). Accordingly, the Northern District of Ohio is the proper venue and Conway's motion to dismiss for improper venue is **DENIED**.

## IV. MOTION TO TRANSFER VENUE

Finally, Conway alternatively requests that the Court transfer the case to the Eastern District of Arkansas pursuant to 28 U.S.C. § 1404(a). (ECF No. 6, PageID #37–39). Conway argues that the transfer of venue is warranted because: (i) "all physical evidence, witnesses, and the defendant to this suit are located in Arkansas"; (ii) "all major events relevant to Plaintiff's claims here occurred in Arkansas"; (iii) Arkansas is a proper venue; and (iv) the Northern District of Ohio is inconvenient. (*Id.* at 38–39).

Multilink responds that Conway has not met its burden for demonstrating that the factors weigh in favor of transfer, noting that courts typically give great deference to a plaintiff's choice of venue and that shifting venues is not appropriate when it merely shifts inconvenience to another party. (ECF No. 11, PageID #118–19). It argues that private interests (convenience to the parties, witnesses, and documentary evidence) do not warrant transfer because Conway only identifies a single Arkansas witness while Multilink has identified numerous Ohio witnesses. (*Id.* at PageID #119–20). Addressing public interest, Multilink notes that Conway has made no public interest

argument in favor of transfer and argues that "there is no reason to believe this Court is any less equipped to hear this matter than a court in Arkansas." (*Id.* at PageID #120). In its reply brief, Conway argues that the case should be transferred to Arkansas because the defective products at issue are fixed products installed in Arkansas, while design documents can be easily transported from Ohio. (ECF No. 12, PageID #134).

A. **Applicable Law**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A district court has broad discretion to grant or deny a § 1404(a) motion to transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). When deciding a motion to transfer venue, a district court should typically consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, public-interest concerns, as well as whether the transfer is in the interests of justice." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019) (citing *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)).

District courts will consider some of the following private and public interest factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the location of operative facts; (4) the ability to compel unwilling witnesses; (5) the interests of justice; (6) ease of access to sources of proof; and (7) the plaintiff's choice of forum. *See Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016); *see also Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) ("In resolving the motion, the court considered six factors: 'the convenience of the parties and witnesses,' the accessibility of evidence, 'the availability of process' to make

15

reluctant witnesses testify, 'the costs of obtaining willing witnesses,' 'the practical problems of trying the case most expeditiously and inexpensively' and 'the interests of justice.'" (citations omitted)). After weighing the various factors, "if a change of venue serves merely to shift the inconvenience from one party to another, a change of venue is generally not warranted." *Hanlon v. Takeda Pharm. N. Am., Inc.*, No. 10-02713, 2011 U.S. Dist. LEXIS 42122, at *4 (N.D. Ohio Apr. 14, 2011) (citations omitted).

A defendant requesting a transfer of venue, bears a heavy burden in opposing the plaintiff's chosen forum. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 1190, 167 L. Ed. 2d 15 (2007). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)).

### B. Analysis of the Factors

#### 1. *Plaintiff's Choice of Forum*

Plaintiff Multilink's choice of forum is entitled to significant weight. Although a plaintiff's choice of forum is not dispositive, that choice is given greater deference when the plaintiff has chosen its home forum. *Piper Aircraft v. Reyno*, 454 U.S. 235, 256, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981); *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 493 (6th Cir. 2016); *see also Mansour Gavin LPA v. Exclusive Grp. Holdings, Inc.*, No. 1:23-CV-02105, 2024 U.S. Dist. LEXIS 65171, at *7 (N.D. Ohio Apr. 3, 2024) ("District courts accord great deference to a plaintiff's choice of forum, especially where plaintiffs sue in their home forum." (cleaned up)). Multilink, an Ohio corporation, chose to initiate the instant proceedings in its home state of Ohio. Thus, the plaintiff's choice of forum factor weighs against transfer.

### 2. *Convenience of the Parties and Witnesses*

The convenience of the parties factor is largely neutral. Multilink is located in Ohio, Conway is located in Arkansas, and neither party has identified any particular, unique hardship if they were forced to litigate outside their respective home states. However, the convenience of the witnesses factor weighs slightly against transfer. The Eastern District of Arkansas is most likely closer and more convenient to Conway's potential witnesses. Likewise, the Northern District of Ohio will be more convenient to Multilink's potential witnesses. However, Multilink has specifically identified several trial witnesses who are located in Ohio, (ECF No. 11, PageID #118–19, ECF No. 11-1, PageID #126), while Conway has failed to specifically identify the number or names of any specific witnesses located in Arkansas, (*see* ECF No. 6, PageID #37–39). Thus, this factor weighs in favor of Multilink and against transfer. *See Bacik v. Peek*, 888 F. Supp. 1405, 1409 (N.D. Ohio 1993) (finding that "[i]f a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be[,] the application for transfer will be denied"); *3B Holdings, Inc. v. Revere Plastics Sys., LLC*, No. 1:23-CV-1137, 2023 U.S. Dist. LEXIS 187588, at *8 (N.D. Ohio Oct. 19, 2023) ("However, this factor favors Plaintiff because it identified witnesses by name and location. . . . Defendant did not.").

### 3. *Operative Facts and Accessing Sources of Proof*

Conway asserts that these factors weigh in its favor because "all physical evidence" is located in Arkansas and "all major events" relevant to this action occurred in Arkansas. (ECF No. 6, PageID #38). It also contends that the defective MicroDucts product cannot be replicated and transferred to the Northern District of Ohio. (ECF No. 12, PageID #134).

The operative facts for this action occurred in both Ohio and Arkansas, and appear to be distributed in mostly equal parts. Multilink's complaint seeks a declaratory judgment related to

the contract/purchase agreements between Multilink and Conway and primarily concern whether: (i) the purchase agreements are binding contracts; (ii) the statute of limitations bars Conway from pursuing breach of contract and warranty claims; and (iii) Conway missed the deadlines to reject the relevant goods and request a refund. (ECF No. 1-1, PageID #8–11). The negotiations and discussions relating to the parties' contract occurred based on communications between persons located in Arkansas, Missouri, and Ohio. The relevant goods were manufactured and shipped from Ohio, while they were received and installed in Arkansas. Even though almost all of the evidence relating to the alleged defectiveness of the relevant goods is located in Arkansas, the plaintiff's action does not require a determination as to whether the goods are actually defective.

    The Court finds that the evidence relevant to Multilink's cause of action is likely split evenly between Arkansas and Ohio. As to Conway's assertion that transfer is warranted because the defective products cannot be easily transported to Ohio, the Court finds this argument unavailing. Most of the relevant evidence related to formation, negotiation, and execution of the contract will be electronic in nature and will not impose a heavy burden on either party. *See Airgas USA, LLC v. Pro2 Respiratory Servs., LLC*, 2016 U.S. Dist. LEXIS 110717, at *5 (N.D. Ohio Aug. 19, 2016) ("And since any documents requested through discovery will, in all likelihood, be exchanged electronically, the location impact only minimally affects the burden to either party."). To the extent that Conway wishes to introduce evidence related to the defectiveness of the relevant goods, it is unclear why Conway: (i) cannot provide photos, videos, affidavits, testimony, or other evidence on this matter; and (ii) would be required to provide the defective products in the courtroom during trial. Moreover, it is not explained how these "affixed" products will be more easily transferred from their places of installation to a district court in the Eastern District of

18

Arkansas than to a court in the Northern District of Ohio. Accordingly, the Court finds these factors largely neutral.

    4.    *The Interests of Justice*

Neither party makes any argument directly addressing the interests of justice. "Interests of justice include 'concern for judicial economy, the Court's familiarity with the governing law, the interest in resolving controversies locally, and the relative congestion of the courts.'" *Jones v. Ohio Nat'l Life Ins. Co.*, No. 1:20-CV-00356, 2020 U.S. Dist. LEXIS 150192, at *9 (N.D. Ohio Aug. 19, 2020) (quoting *Bradburn v. Wal-Mart Stores, Inc.*, No. 1:12-CV-01095, 2012 U.S. Dist. LEXIS 107673, at *6 (N.D. Ohio Aug. 1, 2012). There is no indication that judicial economy would be best served by transfer to the Eastern District of Arkansas, that there are issues of congestion that need to be addressed through transfer, or that this Court lacks familiarity with the governing law. These factors, and other public interest factors, do not weigh in favor of transfer.

    5.    *Conclusion*

Having weighed the above factors, the Court finds that Conway has not demonstrated that the balance of factors weighs in favor of transfer, let alone *strongly* in favor, in order to overcome Multilink's choice of forum. *See Reese*, 574 F.3d at 320; *Picker Int'l*, 35 F. Supp. 2d at 573. The Court concedes that it will be somewhat inconvenient for Conway to litigate this action in the Northern District of Ohio. But Conway has not met its heavy burden of demonstrating that transfer is warranted. At best, Conway has only established that transferring this action to the Eastern District of Arkansas would merely serve to shift the inconvenience from itself to Multilink. *Hanlon*, 2011 U.S. Dist. LEXIS 42122, at *4.

Accordingly, Conway's motion to transfer venue is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Defendant Conway Corporation's Motion to Transfer Venue and/or Dismiss (ECF No. 6) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Date: May 17, 2024

_____
**CHARLES ESQUE FLEMING
UNITED STATES DISTRICT JUDGE**